

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-12-1997

# Newfound Mgt Corp v. Lewis

Precedential or Non-Precedential:

Docket
96-7702

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

## Recommended Citation

"Newfound Mgt Corp v. Lewis" (1997). *1997 Decisions.* Paper 259.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/259

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 12, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-7702

NEWFOUND MANAGEMENT CORPORATION, GENERAL
PARTNER OF NEWFOUND LIMITED PARTNERSHIP,

v.

CEDRICK LEWIS, individually and in his capacity as
Administrator of the Estate of Bernard Williams;
IRVIN A. SEWER; LUCINDA ANTHONY; EARLE SEWER;
VIOLET SEWER; JASMINE SEWER; LOREL SEWER;
JUDITH CALLWOOD; LEON CALLWOOD; LORNE
CALLWOOD; PERSONS UNKNOWN WHO HAVE
ATTEMPTED TO OBSTRUCT CONSTRUCTION WORK ON
PLAINTIFF'S LAND,

        Cedrick Lewis, Appellant

APPEAL FROM THE
DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN
(D.C. Civ. No. 91-cv-00315)

Argued April 9, 1997

Before: BECKER, ROTH and WEIS, Circuit Judges

Filed November 12, 1997

        Aurelia D. Rashid, Esquire
          (ARGUED)
        No. 8 Crystal Gade
        St. Thomas, US Virgin Islands
          00804

        Counsel for Appellant Cedrick Lewis



        Clair A. Carlson, Jr., Esquire
          (ARGUED)
        Alan Garber, Esquire
        Paul D. Boynton, Esquire
        Mason & Martin
        600 Atlantic Avenue
        Federal Reserve Plaza
        Boston, MA 02210

          Counsel for Appellee Newfound
          Management Corporation

OPINION OF THE COURT

WEIS, Circuit Judge.

In these consolidated cases of quiet title and trespass, a
crucial issue is the location of certain boundary lines.
Under the unique circumstances presented here, we
conclude that the district court properly established the
property lines in a bench trial before submission of the
other issues to a jury. We also determine that the court did
not err in its evaluation of the evidence and application of
survey law. Accordingly, we will affirm the district court's
order as certified under Federal Rule of Civil Procedure
54(b).

This litigation arises out of a long-standing dispute over
ownership and boundaries of property located on the
eastern end of the Island of St. John, United States Virgin
Islands. After severing common issues from an action to
quiet title and consolidating them with a trespass action,
the district court in a bench trial resolved most of those
points against defendants (various heirs and devisees) and
entered judgment in favor of plaintiff Newfound
Management Corporation. Newfound Mgmt. Corp. v. Sewer,
885 F.Supp. 727 (D.V.I. 1995). On stipulation of the
parties, the order was certified as final within the terms of
Fed.R.Civ.P. 54(b).

The facts and disputes presented in this case are
complex and multifarious. Indeed, the district court
remarked in a pre-trial ruling: "As with all land disputes in

2

the Virgin Islands, this one involves a large cast of
characters, hard feelings, and an often incomprehensible
genealogy." To avoid complicating matters unnecessarily,
we will recite only those facts essential to deciding the
issues on appeal.

Although litigation over the realty had taken place in
earlier years, the matter before us began in 1980 as a
probate action brought by persons claiming ownership of
certain tracts of land as rightful heirs of the 19th-century
owners. At stake were the title to and boundaries of parcels
located in the Hansen Bay and Newfound Bay Estates in
the East End Quarter of St. John.1 Included in the relief
requested was the appointment of Eric Christian as

Administrator of the Estate of James George Sewer, who would then bring an action to quiet title to the parcels.

Christian filed the quiet title action on December 15, 1987. Defendant Cedrick Lewis, as Administrator of the Estate of Bernard Williams, filed an answer in February 1988. Newfound intervened as a defendant in December 1988.

On the eve of trial in December 1993, the parties agreed in general terms to a settlement. Seven months later, the court entered a detailed consent judgment in the quiet title action that resolved most issues, but left others for future determination. Over the objections of Newfound, the court directed that the adverse claims of Newfound, the Estate of Bernard Williams as represented by Lewis, and the heirs of Martin Sewer to parcels designated 6-P Hansen Bay and 7-A Hansen Bay would be severed and consolidated for trial with the pending injunction/trespass action brought by Newfound on August 16, 1991.

In that suit, Newfound had asked for an injunction, alleging that several individuals had repeatedly blocked

_____

1. The colorful names given to the land date back, in part, to Danish Colonial times when the rural parts of the Virgin Islands were divided into large tracts for agricultural purposes called "Estates." Each "Estate" was given a distinctive name. Estates in close proximity to each other were grouped together and designated as "Quarters." Dudley v. Meyers, 422 F.2d 1389, 1390 (3d Cir. 1970).

access to the land under development by Newfound and stopped construction work underway. Named as defendants were Lewis, the Sewer heirs, and unknown persons who had attempted to prevent development of the land. In addition to obstruction, which apparently occurred on parcel 6-O-1, Newfound charged defendants with vandalism, as well as threats of violence, trespass, slander of title, and interference with business relations.

In his answer to Newfound's trespass action, Lewis disputed the boundary lines of parcel 6-P and neighboring parcels, including parcel 6-O-1, as drawn by Newfound's surveyor, H. Marvin Berning.2 The answer contained a jury demand and a request for affirmative relief in the nature of a judicial determination of the property's rightful owners. In addition, Lewis asked for damages. Two weeks later, in September 1991, the parties stipulated to the entry of a

preliminary injunction.

On June 14, 1994 (two weeks after entry of the consent judgment in the quiet title action), the district court approved a final pretrial order for the two cases. Noting that Newfound had objected to severance of its claims to parcels 6-P and 7-A for consolidation with the trespass action, the order stated that "the quiet title portion of the action will be tried as a jury-waived action."

The pretrial order set out the contentions of ownership of the various parcels. The parties stipulated that Newfound held record title to parcels 6-O, 6-O-1, 6-O-2, 6-Y, and 6-Z, and that none of the defendants had record title to those parcels. Essentially, Newfound claimed that parcels 6-O, 6-O-1, and 6-O-2 were located as shown on the Berning survey to the north of 6-P.

The defendants' claim to parcel 6-P was based on the consent judgment. Lewis and the Sewer heirs asserted that 6-P was incorrectly shown on that survey and, instead, was located partially within the area that Newfound designated as 6-O, 6-O-1, and 6-O-2.

_____

2. We have attached a rough sketch of the relevant parcels as drawn in the Berning survey.

4

The pretrial order also described Newfound's claim for damages based on the blocking of construction, and listed as exhibits newspaper articles containing the defendants' claims of ownership of the land. The order noted that Lewis was standing "by his demand for a jury trial on all questions of fact." Newfound, however, continued to assert that "the resolution of issues relating to the title and boundaries of the Property are questions for the trial judge to resolve," and that after these determinations, the plaintiffs' damages could be tried to the jury.

On August 19, 1994, two months after approving the pretrial order, the district court struck some of the defendants' counterclaims and affirmative defenses. In their proposed amended answer, the Sewer heirs had asserted that they held undivided equitable interests in parcels 6-O, 6-O-1, and 6-O-2. Similarly, Lewis had claimed an undivided interest in Longbay # 1 and sought to defend the trespass claim on that ground.3 See Restatement (Second) of Torts S 185 (1965) (title of defendant is a defense to trespass).

Assessing the defendants' claims, the district court pointed out that in the Virgin Islands an action to determine "any right or claim to or interest in" real property will be time-barred "unless it shall appear that the plaintiff, his ancestor, predecessor, or grantor was seized or possessed of the property in question within twenty years before the commencement of the action." V.I. Code Ann. tit. 5, SS 32, 31(1)(A) (1967). As the court noted, "defendants have failed to plead an essential element of their case -- that they or their predecessors in interest possessed the land within twenty years of their commencing this action." Accordingly, the affirmative defenses based on the defendants' claims of ownership to Longbay #1 were stricken. The order did not discuss the defendants' title to parcel 6-P, nor did it prevent them from arguing that the allegedly tortious conduct occurred within that parcel's boundaries.

_____

3. Parcels 6-O, 6-O-1 and 6-O-2 are adjacent and comprise part of a larger parcel once known as Longbay #1.

The case came on for jury selection and trial on October 3, 1994. Acknowledging that the proceeding was "essentially to determine whether or not an injunction should be issued," counsel for the Sewer heirs argued that there was no immediate harm and that Newfound had an adequate remedy at law. In addition, counsel contended that the jury should determine whether Newfound owned the land and whether defendants had trespassed. The court responded: "The jury will determine the trespass. The only issue I'm determining is whether or not the plaintiff owns the land on which the trespass allegedly occurred. .. . The Court now only has to decide the issue of permanency and that's what it will do."

On March 27, 1995, the court issued an exhaustive and comprehensive opinion reviewing the extensive documentary evidence and testimony presented at the two-day trial. 885 F.Supp. 727 (D.V.I. 1995). The court determined title to all disputed properties except parcel 10 and expressly located the boundaries of most of the other parcels.

Rather than proceeding to the jury trial as originally planned, on October 3, 1996 the parties stipulated to the entry of a partial final judgment under Rule 54(b). The following paraphrased provisions, inter alia, appeared in the Order Certifying Final Judgment:

- Defendants have title to parcel 6-P;

- By locating parcels 6-O, 6-O-1, 6-O-2, 6-F, 6-Y, and 6-Z, the court implicitly held that 6-P was not located on any of those parcels;

- Defendants assert that the alleged trespass occurred on parcel 6-P, which should have been plotted where the court plotted 6-O, 6-O-1, 6-O-2, 6-F, 6-Y, and 6-Z;

- If the Court of Appeals affirmed the judgment, "plaintiff would withdraw its tort claims against the defendants and the defendants would relinquish to the plaintiff their ownership interest in parcels 6-f and 6-p."

6

The court thereupon certified the March 27, 1995 order as a final judgment under Rule 54(b). Lewis filed a timely notice of appeal, but the Sewer heirs did not.4 Lewis raises a number of issues in his brief that require us to examine the proper scope of our jurisdiction and the adequacy of the Rule 54(b) certification.

I.

We first consider whether we have appellate jurisdiction. Rule 54(b) provides in pertinent part:

> When more than one claim for relief is presented in an action, . . . the court may direct the entry of afinal judgment as to one or more but fewer than all of the claims . . . only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment.

We explained the requirements for a proper Rule 54(b) certification in Sussex Drug Products v. Kanasco, Ltd., 920 F.2d 1150 (3d Cir. 1990). To qualify, the relevant order must first be a final judgment in the sense that it ultimately disposes of an individual claim brought as part of a multiple claim action. Id. at 1153. Second, an immediate appeal must foster efficiency and equitable concerns. Id. We review the former question de novo. Id. We review the decision to certify for an abuse of discretion. Id.

Finality under Rule 54(b) is synonymous with that required under 28 U.S.C. S 1291. Sussex Drug Prods., 920 F.2d at 1153. If the order adjudicates the claim fully so that the court's only remaining task is to execute on the

judgment, then the order will be considered final as to that particular claim within the multiclaim action. Id. at 1153-54. Partial adjudication of a single claim, however, is not appealable despite a Rule 54(b) certification. Id. at 1154;

_____

4. The Sewer heirs filed in our Court a motion to join as appellants, which was received by the clerk some 83 days after the Rule 54(b) order was entered. We denied the motion as untimely. Fed. R. App. P. 4(a)(1), 4(a)(3), 4(a)(5). We will deny their motion for resuscitation for the same reasons.

see also Gerardi v. Pelullo, 16 F.3d 1363, 1368-70 (3d Cir. 1994).

As noted earlier, the parties have attempted to manipulate the finality requirement. According to paragraph 9 of the Rule 54(b) order, if, and only if, we uphold the findings entered on March 27, 1995, then Newfound will "withdraw its tort claims" in exchange for title to parcels 6-P and 6-F. This agreement was modified in a document entitled "Notice of Conditional Waiver of Damage Claims," filed in our Court by Newfound after oral argument. In this document, Newfound agreed to waive all damage claims asserted in the trespass action and agreed to relinquish its claim to Lewis' interest in 6-P if we affirmed the judgment and remanded the case for consideration of its request for a permanent injunction.

We reject this maneuvering as a method of manufacturing finality because Newfound's offer to drop its tort claim is intrinsically contingent. As one Court has aptly held under similar circumstances:

> Litigants and courts cannot, by agreement, avoid the finality requirement of S 1291. While in this case the parties have settled their dispute, the settlement is not a final one, but a contingent one; if we affirm, the parties will go their own ways, but if we reverse the parties will continue to litigate the dispute. The fact that the court of appeals could end the litigation does not make a decision on a single issue final. True, litigation will continue in cases where a court of appeals reverses and remands a case, but in those circumstances the lower court has already ruled on the merits of the case. Here no decision on the merits has occurred.

Union Oil Co. of California v. John Brown, Inc., 121 F.3d 305, 309 (7th Cir. 1997) (quotation and citation omitted);

accord Dannenberg v. Software Toolworks, Inc., 16 F.3d 1073 (9th Cir. 1994) (parties cannot manufacture finality by stipulating to dismissal of outstanding claims without prejudice to reinstituting those claims if the Court of Appeals reverses the judgment on appeal); see generally Bethel v. McAllister Bros., Inc., 81 F.3d 376, 380-83 (3d Cir.

1996) (final judgment rule does not prevent appeal from otherwise unappealable order if plaintiff voluntarily and finally abandons all other live claims). Therefore, we must review the jurisdictional issue further.

The partial consolidation of the quiet title and trespass actions presents complications. Consolidation orders tend to obscure questions of finality and practice under Rule 54(b) because a factual determination may be conclusive in one claim but not in the other. See, e.g., Bergman v. Atlantic City, 860 F.2d 560, 565-67 (3d Cir. 1988); Bogosian v. Gulf Oil Corp., 561 F.2d 434, 440-41 (3d Cir. 1977); see also UGI Corp. v. Clark, 747 F.2d 893, 894 (3d Cir. 1984); see generally Gaylord A. Virden, Consolidation Under Rule 42 of the Federal Rules of Civil Procedure: The U.S. Courts of Appeals Disagree on Whether Consolidation Merges the Separate Cases and Whether the Cases Remain Separately Final for Purposes of Appeal, 141 F.R.D. 169 (1991) ("Virden"). We apply a case by case-by-case approach to determine whether a judgment entered in one action may be considered final and appealable while a second action with which the first was consolidated remains pending in the district court. Bergman, 860 F.2d at 566.

At this point, a brief review of the factual issues will be helpful in understanding the appealability question. The location of parcel 6-P is the crucial issue common to both suits and the essential point of disagreement between the parties. Parcel 6-P is bounded in part by parcel 6-O-1 on the north and by the George-Sewer line on the south. The parties do not disagree on the place on the ground where the obstruction incidents asserted by Newfound allegedly occurred, but heatedly contest whether that situs was located within parcel 6-P or 6-O-1.

From the beginning, the parties have disputed the location of the George-Sewer line, so named because in 1893 a Danish surveyor drew a line to separate the property of William George to the north (through whom Lewis and the Sewer heirs claim title) and Eve Marie Sewer to the south. The rudimentary and unspecific nature of the survey, coupled with the proliferation of George and Sewer heirs, has contributed substantially to this lengthy

litigation.

According to Lewis, the eastern point of the relevant segment of the George-Sewer line is 600 feet further north than is shown on the Berning survey. If Lewis were correct, the northern boundary of parcel 6-P would lie on the land that Berning considered part of parcel 6-O-1 and would place the site where the alleged obstruction of construction occurred within parcel 6-P.

Lewis has title to 6-P by virtue of the consent judgment in the quiet title action, and contends that he could not be a trespasser on his own land.5 Newfound claims that Berning properly located the George-Sewer line and, as a result, the trespass occurred on parcel 6-O-1.

The district court located the George-Sewer line, including the segment running along the southern border of 6-P, as shown on the Berning survey. Thereafter, the court plotted the boundaries of parcel 6-O-1, including its southern boundary, which is common to the northern boundary of 6-P. By locating the George-Sewer line, the southern boundary of parcel 6-O-1, and the southern boundaries of the other parcels comprising the former Longbay #1, the district court, by necessary implication, located parcel 6-P (at least the disputed northern and southern boundaries) as shown on the Berning survey.

Because the effect of the district court's findings was to negate his ownership defense to trespass, Lewis desired an appeal before proceeding to a jury trial. For Newfound, whose primary goal was to develop the land, resolution of the boundary dispute would determine whether a basis for permanent injunction existed. Therefore, in an effort to save the time and expense of another trial, as well as to receive prompt appellate review of the critical boundary determination, the parties entered into the court-approved Rule 54(b) stipulation. If the certification were dispositive, we could proceed to the merits without further ado, but as we stated in National Union Fire Ins. Co. of Pittsburgh v. City

_____

5. The pre-trial ruling, which Lewis did not challenge in his brief, prevents him from asserting title to parcel 6-0-1 in defense of trespass, and he may not defend on the theory that some unrelated person actually has title. Prosser & Keeton, The Law of Torts S 13 at 77 (5th ed. 1984).

Savings, F.S.B., 28 F.3d 376, 382 (3d Cir. 1994), "simply because a district court certifies a matter under Rule 54(b) does not automatically result in proper appellate jurisdiction."

We agree with the district court that its findings with respect to parcel 6-P in the quiet title case are final and subject to appeal with a proper certification, even though that parcel remains to be surveyed. See 885 F. Supp. at 771-72. For all practical purposes, title to 6-P and its boundaries have been adjudicated beyond realistic variance. See Sekaquaptewa v. MacDonald, 575 F.2d 239, 242-43 (9th Cir. 1978) (partition order that contemplated future proceedings, including a survey, was final nonetheless because it practically disposed of the parties' interests in the land) citing Forgay v. Conrad, 47 U.S. 201, 204-05 (1848). But see Calistro v. Kean, 389 F.2d 619, 620-22 (3d Cir. 1968) (determination of one boundary line in boundary dispute was not final because placement of other lines could have affected the first line's location).

On the other hand, with respect to the trespass action, the court's order was not final because it disposed only of a boundary defense and did not adjudicate liability, damages or injunctive relief. In these circumstances, certification does not put the trespass case before us because the order lacks the requisite degree offinality. See generally Liberty Mutual Ins. Co. v. Wetzel, 424 U.S. 737 (1976). Nevertheless, we have jurisdiction to consider whether the consolidation order prevented the district court from resolving disputes over 6-P in the quiet title suit before a jury would have addressed the same issues in the trespass action. That is an important facet of the case to which we shall turn. A challenge to the sequence of trial is fairly within the scope of the district court's order in the quiet title action which is properly before us. Accordingly, we have jurisdiction to consider Lewis' claim that a jury should have resolved the issues as to the location of parcel 6-P.6

_____

6. We therefore need not decide whether this case is an appropriate occasion for the discretionary application of pendent appellate jurisdiction. See In re Tutu Wells Contamination Litig., 120 F.3d 368, 382 (3d Cir. 1997); Hoxworth v. Blinder, Robinson & Co., 903 F.2d 186, 209 (3d Cir. 1990); United States v. Spears, 859 F.2d 284, 287 (3d Cir. 1988); Kershner v. Mazurkiewicz, 670 F.2d 440, 449 (3d Cir. 1982) (en banc).

II.

The parties hold widely divergent views on the role of the jury in this case. Lewis never demanded or asserted a right to trial by jury in the quiet title action -- he had no such entitlement. On the other hand, he at all times requested that a jury determine all the issues in the trespass action, including the boundaries of parcel 6-P.

The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." Because the Virgin Islands is a territory, the provisions of the Bill of Rights do not apply to it except as expressly provided in the Revised Organic Act. The Revised Organic Act does incorporate the Seventh Amendment into Virgin Islands law. See 48 U.S.C. S 1561. We apply not only the text of the Amendment, but also the judicial gloss as developed over two centuries.

The word "preserved" demands a historical inquiry to determine whether the suit, if filed in the English courts before 1791, would have fallen within the jurisdiction of law or equity. Parsons v. Bedford, 28 U.S. (3 Pet.) 433, 446-47 (1830). Actions at law entitle the parties to a jury, but equitable cases do not. Whether a suit properly comes within the scope of equity has customarily depended on whether the plaintiff's remedy at law is adequate. This inquiry is the touchstone of Seventh Amendment jurisprudence. Dairy Queen v. Wood, 369 U.S. 469, 478 (1962); Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506-07 (1959).

When confronting a statutorily-created cause of action, courts must draw analogies to traditional common law suits in determining whether the case is within the jurisdiction of law or equity. See, e.g., Tull v. United States, 481 U.S. 412, 417 (1987). This litigation, however, involves the tort of trespass to land, a cause of action well-recognized in 18th-century England. As such, we do not resort to analogies, but look for guidance to the history of those early suits, particularly those seeking injunctive relief.

The generally accepted modern rule is that equity has jurisdiction to grant relief against repeated trespasses on the theory that successive legal actions for monetary damages do not provide adequate relief. See 4 J. Pomeroy, Equity Jurisprudence S 1357 (5th ed. 1941). According to

Pomeroy, "if repeated acts of wrong are done or threatened, although each of these acts, taken by itself, may not be destructive, and the legal remedy may therefore be adequate for each single act if it stood alone, then also the entire wrong will be prevented or stopped by injunction, on the ground of avoiding a repetition of similar actions . . . ." Id. at 964-65 (emphasis in original); see also Archer v. Greenville Sand & Gravel Co., 233 U.S. 60, 65-66 (1914); Donovan v. Pennsylvania Co., 199 U.S. 279, 304-05 (1905); Pittsburg, S. & W. R. Co. v. Fiske, 123 F. 760, 761 (3d Cir. 1903).

Some early nineteenth-century American judges, however, believed that equity had no jurisdiction in trespass actions because the law provided adequate remedies. See Jerome v. Ross, 7 Johns Ch. (N.Y.) 315, 336-37 (1823) (Kent, Ch.). Our research, however, does not support that conclusion. Several English courts, particularly those presided over by Chancellor Hardwicke and Lord Thurlow, granted injunctions in cases of continuing trespass. See Flamang's case, noted without citation in Hanson v. Gardiner, 7 Ves. 306, 308 (1802) (Lord Eldon); Hamilton v. Worsefold, Register's Book, A. 1786 folio 1 (Lord Thurlow), noted in Courthope v. Mapplesden, 10 Ves. 290 (1804) (Lord Eldon); Coulson v. White , 3 Atk. 21 (1743) (Hardwicke, Ch.); see generally Zechariah Chafee, Jr. and Roscoe Pound, Cases On Equitable Relief Against Torts (1933 ed.).

It is in this context that Newfound argues that its trespass action, historically sounding in equity, does not entitle Lewis to a jury trial on all issues. Lewis' claim for damages does not change that result, Newfound contends, because once the chancellor assumes jurisdiction to grant an injunction, he has the power to award monetary relief against offending parties that is " `incidental to or intertwined with injunctive relief.' " Chauffeurs, Teamsters and Helpers, Local No. 391 v. Terry, 494 U.S. 558, 571

13

(1990), quoting Tull v. United States, 481 U.S. 412, 424 (1987). However, Newfound's agreement at pretrial to try most of the trespass issues, particularly damages, to a jury makes that theory of equity jurisdiction largely irrelevant.

Lewis contends that this so-called "clean up" doctrine, giving equity the right to assess damages, is totally inapplicable. He argues that Beacon Theatres and Dairy Queen entitle him to have a jury trial in Newfound's trespass suit.

In Beacon Theatres, plaintiff requested a declaratory judgment and defendant counterclaimed for antitrust damages. The trial court ruled that certain issues common to the plaintiff 's equitable claim and the defendant's counterclaim for damages be tried first to the bench. The Supreme Court reversed, reasoning that such a procedure denied defendant a trial by jury of the issues raised in the counterclaim in violation of the Seventh Amendment. 359 U.S. at 506-11.

The Court reinforced the Beacon Theatres principle in Dairy Queen, by rejecting the notion that the "right to trial by jury may be lost as to legal issues where those issues are characterized as `incidental' to equitable issues." 369 U.S. at 470. The Court noted that "[i]t would make no difference if the equitable cause clearly outweighed the legal cause so that the basic issue of the case taken as a whole is equitable." Id. at 473 n.8.

Finally, in Ross v. Bernhard, 396 U.S. 531 (1970), the Court summarized the holding of Beacon Theatres and Dairy Queen:

> "where equitable and legal claims are joined in the same action, there is a right to jury trial on the legal claims which must not be infringed either by trying the legal issues as incidental to the equitable ones or by a court trial of a common issue existing between the claims."

Id. at 537-38.

These cases share the common theme in the references to procedural rules. In Beacon Theatres, Rule 13 authorized assertion of the legal counterclaim. In Dairy Queen, Rule 18

14

permitted joinder of all claims in one complaint. Thus, if the issues related to both the legal and equitable claims can be resolved in one lawsuit, then the right to a jury trial attendant to the legal claims will prevail. A contrary rule would eviscerate the right to a jury given the preclusive effect that would flow from the rulings in a prior bench trial. Avoiding such a result was the "major premise" of Beacon Theatres. Parklane Hosiery Co. v. Shore, 439 U.S. 322, 333 (1979); see also Amoco Oil v. Torcomian, 722 F.2d 1099, 1104 (3d Cir. 1983).

At first blush, therefore, it appears that Lewis' position is supported by applicable precedent. But significant distinctions exist that dictate otherwise.

The Beacon Theatres analysis applies when the legal and equitable claims are joined either in the same complaint, Owens-Illinois, Inc. v. Lake Shore Land Co., 610 F.2d 1185, 1190 (3d Cir. 1979), or in the same action through a complaint and counterclaim. Torcomian, 722 F.2d at 1104. Here, however, we are presented with consolidation of legal and equitable claims under Rule 42(a). Reevaluating equity's jurisdiction over legal issues in light of"the liberal joinder provisions of the Federal Rules which allow legal and equitable causes to be brought and resolved in one civil action," the Supreme Court in Beacon Theatres referred specifically to Rules 1, 2, and 18 in a footnote. 359 U.S. at 509 n.14. Conspicuous by its absence from this list was Rule 42 ("Consolidation; Separate Trials").

Although for purposes of appellate jurisdiction a consolidation order entered under Rule 42(a) may result in a single unit of litigation, the order entered here did not create a "single case" for jury trial purposes. When interpreting the predecessor to Rule 42(a), the Supreme Court stated that "consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties . . . ." Johnson v. Manhattan Ry. Co., 289 U.S. 479, 496-97 (1933).

In Johnson, two suits brought by two separate groups of creditors sought a receivership of the same company. The Court held that attacks by plaintiff in the second suit on

15

the judge and receiver in the first suit were collateral, as opposed to direct, despite the order of consolidation. Id. at 495-96. Johnson remains the "authoritative" statement on the law of consolidation. 9 Wright & Miller, Federal Practice and Procedure: Civil 2d S 2382, at 430 (1995); see also Alfred Dunhill of London v. Republic of Cuba, 425 U.S. 682, 735 (1976) (Marshall, J., dissenting); Virden, 141 F.R.D. at 178.

We followed the teachings of Johnson in Bradgate Associates v. Fellows, Read & Associates, 999 F.2d 745 (3d Cir. 1993). There, the district court had consolidated two lawsuits; one originally filed in federal court and the other removed to that forum. Finding an absence of diversity, the district court remanded both cases to the state court. Id. at 748-49. We reversed and held that treating the consolidated cases as a single civil action would impermissibly enlarge the rights of one of the parties by affording it a state court trial in a case originally filed in

federal court. As to that suit, dismissal was the proper disposition. By treating the actions as a single unit, the district court's order failed to respect the separate and distinct nature of the two lawsuits. Id. at 750-51.

The teachings of Johnson and Bradgate prevent Lewis' jury demand in the trespass action from extending to the quiet title portion of the case. To determine otherwise would allow the consolidation order without more to "merge the suits into a single controversy" contrary to prevailing precedent.

We are not swayed in our conclusion by two cases decided after Johnson. Both approved a jury trial on common issues arising in consolidated cases when the right was appended to only one of the actions. Neither case cited Johnson. See Blake v. Farrell Lines, Inc., 417 F.2d 264 (3d Cir. 1969); United States v. Nordbrock, 941 F.2d 947 (9th Cir. 1991).

In Blake, the district court ordered a jury trial where two suits had been consolidated. One case was for personal injury and the other was in admiralty seeking indemnity. Of course, the right to a jury trial did not apply to the admiralty action. The case is easily distinguishable because

16

the personal injury suit was filed first and was a necessary predicate to the indemnity suit. There, the factual issues were interdependent and both suits were based on the same incident.

Nordbrock began with an equitable action brought by the Internal Revenue Service. After the trial, the court imposed a penalty assessment against defendant. He paid part and sued for a refund, demanding a jury trial. The cases were eventually consolidated and common issues tried to the bench. The Court of Appeals held that once the two cases were consolidated defendant became entitled to a jury trial on all issues. 941 F.2d at 949. We think Nordbrock is distinguishable on its facts and not applicable here.7

The differences between these two cases and the case before us are significant. Unlike the typical Beacon Theatres scenario where the legal and equitable claims are filed contemporaneously (or close to it) and arise out of the same incident, the complaint in the quiet title action had been filed almost four years before Newfound's trespass action. In fact, the equitable case had been pending for years before the alleged obstruction incident occurred. Moreover, most of the claims in the quiet title action had been the

subject of a consent judgment entered before the trespass case was even reached for pretrial. The post-consolidation bench trial that located parcel 6-P was simply a continuation of the quiet title trial.

Had the quiet title action been tried to completion in the normal course of events, it would have resulted in a judgment clarifying the state of the titles and the location

_____

7. One commentator contends that courts should treat consolidated cases as a single, civil action for most purposes. Joan Steinman, The Effects of Case Consolidation on the Procedural Rights of Litigants: What They Are, What They Might Be; Part 1: Justiciability and Jurisdiction (Original and Appellate), 42 UCLA L. Rev. 717 (1995); Joan Steinman, The Effects of Case Consolidation on the Procedural Rights of Litigants: What They Are, What They Might Be; Part II: Non-Jurisdictional Matters, 42 UCLA L. Rev. 967 (1995). We are impressed with her efforts, particularly as applied to Rule 54(b), but believe that Johnson, Bradgate and Virden undermine the argument for creation of a single litigation unit after consolidation.

of parcel 6-P even before the trespass incident took place. Unfortunately, delays in disposition of litigation in the Virgin Islands at that time were not unusual, caused as they were by the lengthy period when the two resident judgeships went unfilled.8

Furthermore, the only overlap of relevant issues between the two suits was the location of parcel 6-P. The bench trial did not address the other elements of the alleged trespass. This situation thus contrasts with the usual Beacon Theatres scenario where substantial factual overlaps occur. Given these circumstances, we do not believe that Beacon Theatres demands that the dispute over location of parcel 6-P be tried to a jury first.

In summary, we conclude that Beacon Theatres does not apply in these consolidated cases where the equitable action was filed long before the legal one, the trial was a continuation of the equity matter, the overlap of factual matters was not extensive, and inordinate delay had prevented timely completion of the equity case. Thus, the district court did not run afoul of the Seventh Amendment by resolving the factual dispute over the location of parcel 6-P in a finding from the bench.

III.

Lewis complains that the court erred in accepting much

of Berning's testimony because Berning was not licensed in 1969 when he drafted some surveys, and because he did not follow approved survey practices.

Berning testified that he performed survey work in the Virgin Islands from 1958 through 1974 as a duly licensed engineer. He then left the Islands. Upon returning some ten years later, Berning encountered a new requirement that forced him to take an examination to obtain a surveyor's license. He successfully passed the test and was issued a license. Berning had extensive experience in surveying

_____

8. Judge Almeric Christian assumed Senior status on May 15, 1988. Judge David O'Brien died on December 22, 1989. Thefirst vacancy was not filled until June 30, 1992 when Judge Thomas Moore assumed office. The second was filled by Judge Raymond Finch on May 9, 1994.

activity on St. John. In addition, he had prepared an aerial survey of the East End and done personal research into documents of title in Denmark. Understandably, the defendants' counsel did not challenge Berning's qualifications as an expert at trial.

Describing his surveying methods, Berning explained that when monuments or precise definitions of metes and bounds proved unhelpful, he would discuss boundaries with older residents and adjacent owners, or rely on such clues as fences or ridge lines. We are satisfied that the district court properly evaluated this procedure in appraising Berning's testimony. The fact that he had not been licensed as a surveyor by the Virgin Islands in 1969 when drafting some of the surveys he referred to does not furnish a basis for discrediting Berning's testimony on those matters.

IV.

Lewis further contends that the district court erred in failing to apply proper survey law in determining the location of various parcels. Particularly, he finds fault with the court's acceptance of Berning's survey as to the location of the George-Sewer line that borders parcel 6-P on the south.

As noted earlier, a Danish surveyor named Anderson established the line in 1893, using compass bearings and stone piles as markers. There were no pretensions that this represented a precise survey on the ground. Acreage was of little value at the time and would not have justified the

expense of an accurate survey. The George and Sewer
families memorialized their agreement to be bound by
Anderson's survey in 1894.

In the years following, the families' interests in the land
were transferred through deed and inheritance. Still,
imprecise boundary lines coupled with the increasing
number of descendants made accurate conveyancing an
ideal rather than a reality. Another agreement, intended to
identify numbered land parcels, was reached in 1913
among the defendants' ancestors. Like that reached in
1894, this agreement did not refer to any detailed survey.

Lewis raises these points in attacking the Berning survey,
which locates parcels with larger acreage than mentioned in
the 1913 agreement.

For example, Lewis contends that Newfound is not a
bona fide owner of parcel 6-O because the deed from one of
its earlier owners recited acreage of 7.25, but the 1913
agreement apparently referred to the same tract as
containing substantially less land. This theory is flawed,
however, since the 1913 agreement never purported to rely
on an accurate survey. Overall, we are not persuaded that
the district judge failed to evaluate this evidence
appropriately.

Lewis also contends that the district court erred in
accepting the Berning survey of the George-Sewer line in
preference to that of Rudolph Galiber, an expert who
testified on the defendants' behalf. For his location of the
line, Galiber relied on a stone pile marker on the east side
of the property and on Anderson's compass bearings when
placing one end of the George-Sewer line several hundred
feet farther north than located by Berning.

We believe that the district court was justified in
accepting Berning's location based on his greater familiarity
with the area and more extensive work on the survey.
Although Galiber had survey experience in various parts of
the world, Berning was more familiar with the practice in
St. John. He grappled with the problem of the George-
Sewer line at length, while Galiber spent only eight hours
on the question when preparing for trial.

One can scarcely underestimate the difficulties involved
in determining the state of titles and boundary locations in
the absence of adequate surveys, probate proceedings, and
appropriate monuments. The district court's review of the
available documentary evidence and testimony was careful

and painstaking. It applied appropriate legal principles and its findings are not clearly erroneous.

We will affirm the judgment of the district court. The case will be remanded to the district court for further proceedings consistent with this Opinion. The court shall entertain Newfound's request for a permanent injunction and direct prompt completion of the survey of parcels 6-P

and 7-A. The court shall give full effect to the parties' waiver of claims as set out in the district court's order of October 3, 1996 and Newfound's Notice of Conditional Waiver of Damage Claims dated July 3, 1997.9

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

_____

9. Although jurisdiction over cases of this nature now resides in the territorial court, the district court retains jurisdiction here because the
suits were filed before October 1, 1991, the effective date of V.I. Code Ann. tit. 4, S 76(a) (Supp. 1997). See Isidor Paiewonsky Assocs. v. Sharp Properties, 998 F.2d 145 (3d Cir. 1993).