PRIVATEER BAY MANAGEMENT CORPORATION, General Partner of Privateer Bay Limited Partnership,

v.

HEIRS OF Martin SEWER Including Irvin Sewer, Violet Odessa Sewer Mahabir, Roy Sewer and all other persons claiming an interest in Parcel 7C, Estate Hansen Bay, No. 7 East End Quarter, St. John, U.S. Virgin Islands Irving Sewer, Appellant,

Privateer Bay Management Corporation, General Partner of Privateer Bay Limited Partnership,

v.

Irvin Sewer; Violet Sewer, The Estate of Bernard Williams and Cedric Lewis and Robert Leycock as the Co–Administrators of the Estate of Bernard Williams Irwin A. Sewer, Appellant.

Nos. 03–3681, 03–3682.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) May 6, 2004.

Decided May 27, 2004.

Alan Garber, Mason & Martin, Boston, MA, Vincent A. Fuller, Jr., Charlotte Amalie, USVI, for Appellees.

Irvin Sewer, Charlotte Amalie, USVI, pro se.

Before BARRY, AMBRO, and SMITH, Circuit Judges.

## OPINION

AMBRO, Circuit Judge.

Irvin A. Sewer ("Sewer") appeals the judgments of the District Court of the Virgin Islands, Division of St. Thomas and St. John, with respect to two parcels of land in St. John. Because we conclude that the Court did not err in its evaluation of the evidence or its application of the law, we affirm.

1. PBMC subsequently acquired additional interests in Parcels 7A and 7C from individuals who are not parties to this appeal.

2. A third suit settled before trial.

## I. Factual and Procedural History

This appeal is the most recent chapter in a long and tortuous Virgin Islands property dispute. The twists and turns of this litigation have been recounted many times by the District Court as well as by our own Court. *E.g., Newfound Mgmt. Corp. v. Sewer,* 885 F.Supp. 727 (D.Vi.1995) (*"Newfound 1995"*); *Newfound Mgmt. Corp. v. Lewis,* 131 F.3d 108 (3d Cir.1997) (*"Newfound 1997"*); *Newfound Mgmt. Corp. v. Sewer,* 34 F.Supp.2d 305 (D.Vi.1999) (*"Newfound 1999"*). Thus we provide only a brief summary of the relevant facts.

Newfound Limited Partnership ("Newfound") acquired various ownership interests in land in east St. John over a twenty-five year period. On December 30, 1996, Newfound deeded those interests to Privateer Bay Management Corporation, General Partner of Privateer Bay Limited Partnership ("PBMC").[1] Newfound and then PBMC paid the real estate taxes on both parcels beginning in the early 1970s, as well as all survey costs associated with determining their boundaries.

In 2001, PBMC filed two related actions in the District Court.[2] In each proceeding, PBMC sought to partition a parcel of land and collect from the other owners their proportionate shares of the real estate taxes and survey costs it had paid. The parcels at issue in this appeal are Parcel 7A and Parcel 7C. The sole remaining defendant is Sewer.[3]

Various issues pertaining to the parcels have been determined by the District Court in prior litigation. Most important-

3. In the Parcel 7A litigation, Sewer's sister, Violet Odessa Sewer Mahabir ("Sewer Mahabir"), and the Estate of Bernard Williams both settled with PBMC prior to trial. In the Parcel 7C litigation, Sewer Mahabir settled with PBMC and Roy Sewer sold his interest to Sewer.

ly, the District Court has quieted title to Parcel 7A, *Newfound 1995*, 885 F.Supp. at 772–774, *aff'd*, 131 F.3d 108 (3d Cir.1997), and determined its location and boundaries, *Newfound 1999*, 34 F.Supp.2d at 311–13.

The litigation spawning these appeals was tried before District Judge Brotman in late 2002 and early 2003. In each case, the Court issued findings of fact and conclusions of law, as well as a judgment and order of sale, on July 29, 2003.

In the Parcel 7A litigation, PBMC established at trial that it owns 95.614265% and Sewer owns 4.385735% of that Parcel as tenants in common.[4] PBMC introduced evidence regarding its payment of real estate taxes and survey costs, as well as Sewer's contribution of $95.72 toward the 2001 real estate taxes. The District Court entered a judgment in favor of PBMC in the amount of $1,816.76 for real estate taxes, and $197.50 for survey costs, paid by it. Noting that Sewer's interest in the property would entitle him to a lot smaller than the half-acre minimum permitted by local zoning requirements, the District Court ordered Parcel 7A to be sold at auction.

In the Parcel 7C litigation, PBMC again sought reimbursement for tax and survey expenses and asked the Court to partition the property. It also added a count seeking to quiet title to Parcel 7C. PBMC sought to establish a 97% ownership interest in that Parcel, and Sewer produced no evidence to the contrary. In addition, PBMC submitted uncontroverted evidence of real estate payments by it totaling $11,696.60 and survey costs of $4,503.33. The District Court found that PBMC and Sewer owned 97% and 3% of Parcel 7C, respectively. It also awarded PBMC $331.03 for real estate taxes paid. It de-

clined to award PBMC compensation for its payment of the survey costs, finding that no authority compelled it to do so. Finally, as Sewer's 3% interest would not entitle him to a buildable lot, the District Court ordered Parcel 7C to be sold at public auction.

Sewer timely appealed both decisions.

## II. Discussion

Sewer raises a number of concerns in his Informal Brief pertaining to the manner in which the District Court conducted the proceedings. He apparently does not contest the Court's findings. Rather, he challenges the Court's disposition of his objections at trial and his treatment of related procedural issues. We conclude that the District Court appropriately resolved these issues at trial.

## A. Jurisdiction

Although neither party challenges the District Court's subject matter jurisdiction or raised the issue in the District Court, we must assess our jurisdiction *sua sponte*. *See Meritcare Inc. v. St. Paul Mercury Ins. Co.*, 166 F.3d 214, 217 (3d Cir.1999). We briefly describe the jurisdictional basis for the District Court's decisions because it is somewhat murky.

We have recounted the jurisdictional history of the District Court of the Virgin Islands in a number of cases, including *Club Comanche, Inc. v. Gov't of the Virgin Islands*, 278 F.3d 250 (3d Cir.2002), *Callwood v. Enos*, 230 F.3d 627 (3d Cir.2000), and *Brow v. Farrelly*, 994 F.2d 1027 (3d Cir.1993). We therefore note in this case only the relevant statutory provisions.

The Revised Organic Act of 1954, as amended, 48 U.S.C. §§ 1541–1645, defines

---

4. PBMC acquired additional interests subsequent to *Newfound 1999*. The District Court's opinion contains a detailed discussion of these acquisitions.

the jurisdiction of the District Court of the Virgin Islands. Initially the Court was "more like a state court of general jurisdiction than a United States district court." *Carty v. Beech Aircraft Corp.*, 679 F.2d 1051, 1057 (3d Cir.1982). In 1984, however, Congress amended the Revised Organic Act such that the Virgin Islands legislature may vest jurisdiction over local actions exclusively in the local courts. *Callwood*, 230 F.3d at 631. Pursuant to this authority, the Virgin Islands legislature enacted a statute in 1990, 4 V.I.Code Ann. § 76(a), that "divests the District Court of the Virgin Islands of jurisdiction of all local civil actions, but does not divest the District Court of its federal question and diversity jurisdiction in civil actions." *Brow*, 994 F.2d at 1034. Thus the jurisdiction of the District Court of the Virgin Islands is "equivalent, at least in the civil context, to that of a United States District Court." *Club Comanche*, 278 F.3d at 256.

As noted, this appeal stems from two actions, both filed in the District Court in 2001. In the first, involving Parcel 7C, PBMC filed a three-count complaint seeking (1) to quiet title to the parcel, (2) reimbursement from the other owners of the parcel, proportionate to their ownership interests, for real estate taxes and survey costs paid by PBMC, and (3) to locate and partition Parcel 7C. The District Court correctly exercised jurisdiction over this matter pursuant to 48 U.S.C. § 1612, 4 V.I.Code Ann. § 32, and 28 U.S.C. § 1332, as the parties were diverse and the amount in controversy exceeded $75,000 exclusive of costs and interest.

PBMC claimed substantially less than $75,000 in taxes and survey costs (Sewer's proportionate shares of $11,034.11 and $4,503.33, respectively). "It is well settled," however, "that ... the jurisdictional amount is to be calculated on the basis of the property right which is being injured.

If that property right has a value in excess of [the jurisdictional amount,] the Federal Court has jurisdiction of such a diversity suit even though the plaintiff had not suffered [that amount in] damages at the time suit was instituted." *Kelly v. Lehigh Nav. Coal Co.*, 151 F.2d 743, 746 (3d Cir.1945). Thus in an action to quiet title, the amount in controversy is the value of the land— here, according to a 2001 tax assessment, $291,004. *See* 14B Wright, Miller & Cooper, Federal Practice & Procedure § 3702 at 85 (3d ed.1998); *Smith v. Adams*, 130 U.S. 167, 175, 9 S.Ct. 566, 32 L.Ed. 895 (1889). The second and third claims (for reimbursement and partition) were sufficiently "related to claims in the action" to quiet title to fall within the scope of the District Court's supplemental jurisdiction under 28 U.S.C. § 1367.

Jurisdiction over the litigation involving Parcel 7A is more complicated. In 2001, PBMC filed a two-count complaint seeking (1) to recover from Sewer his proportionate share of the real estate taxes and survey costs paid by PBMC, and (2) to partition Parcel 7A. PBMC requested judgment against Sewer in the sum of $2,014.26. Thus the complaint does not appear to support diversity jurisdiction. If we look back to the underlying action, however, we discover that federal jurisdiction exists.

The District Court quieted title to this parcel in 1995 and determined its location and boundaries in 1997. Sewer did not appeal either decision. In assuming jurisdiction of the underlying action to quiet title to Parcel 7A, the District Court exercised jurisdiction pursuant to 28 V.I.Code Ann. § 372, which provides:

In any case where any dispute or controversy exists, or may hereafter arise, between two or more owners of adjacent or contiguous lands in the Virgin Islands, concerning the boundary lines

thereof, or the location of the lines dividing such lands, either party or any party to such dispute or controversy may bring and maintain an action of an equitable nature in the district court, for the purpose of having such a controversy or dispute determined, and such boundary line or lines, or dividing lines, ascertained and marked by property monuments, upon the ground where such line or lines may be ascertained to be, and established in such action.

The case was tried to the bench in October 1994, and the District Court issued its decision in 1995. The quiet title action was filed, however, on December 15, 1987, well before October 1, 1991, the effective date of 4 V.I.Code Ann. § 76(a).[5] Jurisdiction was thus proper under § 372. In fact, our Court has already explicitly approved jurisdiction over that action, in *Newfound*, 131 F.3d at 119 n. 9 (3d Cir.1997) ("Although jurisdiction over cases of this nature now resides in the territorial court, the district court retains jurisdiction here because the suits were filed before October 1, 1991, the effective date of V.I.Code. Ann. tit. 4, § 76(a) (Supp.1997).").[6]

In order to justify federal jurisdiction in the 2001 action, we must take one more step. On remand from our Court, the District Court determined the boundaries of Parcel 7A. *Newfound*, 34 F.Supp.2d at 313. In its opinion, the Court explicitly stated, "The hotly contested issues of title, location, and boundaries have been decided. This Court and the Third Circuit have

now brought finality to these questions, binding all parties accordingly. This Court will, however, continue to maintain jurisdiction over this case." *Id.* It is well-established that a District Court may reserve jurisdiction over ancillary matters in this fashion. *See, e.g., Julian v. Central Trust Co.*, 193 U.S. 93, 109–112, 24 S.Ct. 399, 48 L.Ed. 629 (1904).

**B. Sewer's Arguments on Appeal**

It is difficult to discern the precise nature of Sewer's arguments on appeal. Nonetheless, we identify and address several issues of concern to him.

*1. Hearing Versus Trial*

■ Sewer argues that he was unprepared for trial because he was informed that the proceedings were scheduled for a "hearing" only.[7] We disagree. By orders dated July 17, 2002, the District Court notified all parties that the proceedings were scheduled for "hearing and trial" on November 4, 2003. On October 3, 2002, the Magistrate Judge issued an order stating that "trials remain scheduled during the week of November 4, 2002."

The trial involving Parcel 7C began as scheduled on November 4 and conformed to the ordinary procedures. Based on the record, we conclude that Sewer was aware the case was to be tried. In considering Sewer's objections to Virgin Islands surveying practices, the Judge expressly informed Sewer that his case would be tried

---

5. In 2002, we held that " § 76(a)'s language vesting original jurisdiction in the Territorial Courts in 'all civil actions' includes quiet title actions, notwithstanding the language from § 372 about bringing a quiet title action 'in the district court.' " *Club Comanche*, 278 F.3d at 258.

6. Jurisdiction over the quiet title action would have been proper regardless, pursuant to 48 U.S.C. § 1612(a), because the parties were

diverse and the amount in controversy, $144,298 according to a 1994 tax assessment, exceeded the amount in controversy requirement (then $50,000).

7. Regardless, this issue is likely waived. Sewer suggests that he expressed to the District Court his understanding that he was not attending a trial, but we have been unable to find statements to that effect in the record.

that day. Sewer advised the Court that he intended to call an expert witness, and he cross-examined PBMC's surveyor. He stated that he was aware that the Court was prepared to try the case. And in fact the Court continued the trial based in part on Sewer's objections to videotape depositions entered into evidence by PBMC. The Court also permitted Sewer during this time to depose one of PBMC's expert witnesses, to respond to an outstanding set of requests for admissions, to submit an expert witness report despite non-compliance with the local rules, and to submit a post-trial brief.

On December 2, 2002, the Court issued an order rescheduling the trials for Monday, February 3, 2003. That order also instructed the parties to appear for a pre-trial conference before the Magistrate Judge on Monday January 13, 2003, and to present at that time a revised joint final pretrial order. Sewer submitted trial briefs in both cases on January 6, 2003, but he failed to appear at the January 13 pretrial conference.

Sewer's statements at the February 3 hearing suggest that he was aware the case was in trial. The Court was clear on this point. In fact, the Court opened the Parcel 7C trial by noting that "this case was partially tried the last time we were here, and we will start from the point we left off." In that case, Sewer entered exhibits and advised the Court that he would not be calling any witnesses. He also requested and received thirty days to prepare proposed findings. In the second trial, Sewer delivered an opening statement, indicated that he was ready to proceed, and was given thirty days to submit findings of fact and conclusions of law. There is no indication in the record that Sewer was confused as to the nature of the proceedings in which he actively participated.

### 2. Surveying Practices

■ Sewer next contends, as he has argued throughout the proceedings, that a surveyor may not lawfully survey a parcel without a legal description of the property. He also argues that, because the larger parcel has never been surveyed and its boundaries have never been established, the boundaries of the subparcels were not determined.

Sewer first challenged Virgin Islands surveying practices before the District Court in the 1995 litigation. The Court discussed surveying practices in length in its decision. *Newfound*, 885 F.Supp. at 747–52. Although Sewer did not appeal the Court's decision, his codefendant did, and we affirmed. *Newfound*, 131 F.3d at 119. At trial, the District Court properly advised Sewer that the issue would not be relitigated, as he was precluded from challenging the Court's findings in the current litigation. *See, e.g., Delaware River Port. Auth. v. Fraternal Order of Police*, 290 F.3d 567, 572 (3d Cir.2002) ("Under the doctrine of issue preclusion, a determination by a court of competent jurisdiction on an issue necessary to support its judgment is conclusive in subsequent suits based on a cause of action involving a party or one in privity."); *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979) ("Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation.").

### 3. PBMC's Ownership Interest

Sewer also argues that Newfound Corporation never attained an interest in Parcels 7A and 7C because the heirs of Martin Sewer never issued deeds for these prop-

erties. Therefore, he suggests, PBMC has no ownership interest in the property.

First, Sewer contends that the District Court improperly overruled his objection to PBMC's introduction of a quit-claim deed establishing its ownership interest in Parcel 7C. The deed in question involved the March 23, 1972 conveyance of property to Newfound by Cecil and Anna Roberts. Sewer objected on the ground that the description of the property in the Roberts' deed differed in minor respects from some of the other Parcel 7C deeds entered into evidence by PBMC. Sewer fails to explain how these minor discrepancies invalidate the deed. Moreover, he lacks standing to challenge the deed, as he would not attain an interest in the property as a result of setting aside the Roberts' conveyance. *See Powers v. Ohio*, 499 U.S. 400, 410, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).[8]

### Conclusion

Despite Sewer's contentions to the contrary, we see no indication in the record that the District Court dismissed his arguments out of hand. On the contrary, the Court accorded Sewer patience and leniency in light of his *pro se* status. We are satisfied that the District Court considered Sewer's contentions and disposed of them appropriately. We therefore affirm its decision.

---

8. Sewer also challenges a deed offered by PBMC in an action to which he was not a party. In a dispute between PBMC and the Estate of Bernard Williams with respect to Parcel 6P, Sewer argued (though he was not a party) that a deed he conveyed to Newfound was falsified. The trial judge found that the additions made by PBMC were not material alterations and did not render the deed invalid. The litigation involving Parcel 6P has settled and is not before this Court on appeal.