**NEWFOUND MANAGEMENT CORPORATION, GENERAL PARTNER OF NEWFOUND LIMITED PARTNERSHIP, Plaintiff,**

**v.**

**IRVIN A. SEWER, CEDRIC LEWIS, LUCINDA ANTHONY, EARLE SEWER, VIOLET SEWER, JASMINE SEWER, LOREL SEWER, JUDITH CALLWOOD, LEON CALLWOOD, LORNE CALLWOOD, and PERSONS UNKNOWN WHO HAVE ATTEMPTED TO OBSTRUCT CONSTRUCTION WORK ON PLAINTIFF'S LAND, Defendants.**

Civ. No. 91-315

District Court of the Virgin Islands

Division of St. Thomas and St. John

January 19, 1999

335

ALAN GARBER, ESQ., CLAIR A. CARLSON, JR., ESQ., Mason & Martin, Boston, MA., *Attorneys for Plaintiffs*

ROBERT L. KING, ESQ., St. Thomas, U.S.V.I., *for Newfound Management Corporation, Plaintiff*

GEORGE MARSHAL MILLER, ESQ., St. Thomas, U.S.V.I., *for defendant Irvin A. Sewer*

MARIO BRYAN, ESQ., St. Thomas, U.S.V.I., *for defendant Cedrick Lewis, Administrator the Estate of Bernard Williams*

BENJAMIN A. CURRENCE, ESQ., St. Thomas, U.S.V.I., *for defendant Cederick Lewis*

BROTMAN, *United States District Judge*

## I. INTRODUCTION

A complete discussion of the background of this case is set forth in *Newfound Management Corporation, General Partner of Newfound Limited Partnership v. Sewer, et al.*, 885 F. Supp. 727 (D.V.I. 1995) (the '1995 Opinion') and should be referred to where relevant.

The underlying issues concerning the boundaries and title to various parcels of property on the East End including the quieting of title of Parcel 6p and Parcel 7a, Estate Hansen Bay, East End Quarter, St. John, U.S. Virgin Islands, were tried to the bench pursuant to V.I. CODE ANN. tit. 28 § 372 from October 3 to October 5, 1994.[1] The remaining issues included actions in trespass, libel,

---

[1] The statute states:

In any case where any dispute or controversy exists, or may hereafter arise, between two or more owners of adjacent or contiguous lands in the Virgin Islands, concerning the boundary lines thereof, or the location of the lines dividing such

336

slander, slander of title, intentional interference with business relations and permanent injunction which were reserved for jury trial once a determination was made by the Court as to boundaries and title. On March 27, 1995, this Court rendered its decision regarding the disputed land. However, as to Parcels 6p and 7a, the Court could not determine the boundaries, and therefore directed that a survey be obtained of these parcels. *See* 1995 Opinion at 771-772. The Defendants appealed this decision to the Third Circuit.

While the Defendants appeal was still pending in June of 1996, the parties, pursuant to a settlement agreement, provided that in the event the Third Circuit affirmed this Court's decision and order of March 27, 1995, the plaintiff would withdraw its tort claims against the defendants and the defendants would relinquish to the plaintiff their ownership interest in parcels 6f and 6p. Deeds for 6p and 6f were placed in escrow with an appropriate release of the reserved claims. It was also agreed that the preliminary injunction that was entered in September of 1991 would be continued until modified by the Court. On October 3, 1996 in accordance with the agreement, this Court ordered a Certification of Final Judgment pursuant to Fed. R. Civ. P. 54(b) of the March 27, 1995 Order.

Subsequently, the Third Circuit, on November 12, 1997, affirmed this Court's opinion, remanding to this Court for further proceedings, including Newfound's application for a permanent injunction and completion of the survey of parcels 6p and 7a. The Circuit Court also ordered the Court to give full effect to the waiver of claims set out in the October 3, 1996 order and the Waiver of Damage Claims dated July 3, 1997. *See Newfound Management Corporation, General Partner of Newfound Limited Partnership v. Cedrick Lewis, et al.*, 37 V.I. 612, 131 F.3d 108 (3d Cir. 1997)

lands, either party or any party to such dispute or controversy may bring and maintain an action of an equitable nature in the district court, for the purpose of having such a controversy or dispute determined, and such boundary line or lines, or dividing lines, ascertained and marked by property monuments, upon the ground where such line or lines may be ascertained to be, and established in such action.

V.I. CODE ANN. tit. 28 § 372 (1976); *see also* 1A C.J.S. Actions § 129 (1955) (An action to quiet title is an equitable proceeding).

This Court in compliance with the remand will now determine: (1) the validity of the Survey for Parcels 6p and 7a which includes Defendant's Motion to Reject Survey Map No. 1919 (i.e. Exhibit 1); and (2) Plaintiff's Motion for Permanent Injunction. In addition, the Court will also determine Plaintiff's Motion to File an Amended Complaint and Plaintiff's Motion for Counsel Fees. A hearing was held on November 5, 1998 on these issues.[2][3]

## PART ONE: THE SURVEY

## I. INTRODUCTION

After a careful, detailed review of the entire record, including expert testimony, exhibits presented by the parties, and argument of all counsel and defendants Sewer and Lewis individually, the

---

[2] Present at the hearing were: 1) Alan Garber, Esq., Claire A. Carlson, Jr., Esq., and Robert King, Esq. on behalf of Plaintiff, Newfound; 2) George Marshall Miller, Esq. on behalf of the defendant, Irvin A. Sewer; 3) Mario E. Bryan, Esq. ("Bryan") on behalf of defendant, Cedric Lewis as Administrator of the Estate of Bernard Williams. Vincent Fuller, Esq. ("Fuller") presented himself to the Court on behalf of Cedric Lewis ("Lewis"), the individual, but was not prepared to enter his appearance. *See* Hearing on Motions, Tr. 4.11 - 4.20. The Court, at side bar conference, in response to its inquiry of defendant Sewer's counsel George Miller, Esq., was informed that both he and Fuller shared office space together as well as the same telephone number. The Court was concerned as to a possible conflict, but that issue was not reached since Fuller continued to decline to enter his appearance. The Court excused him from counsel table, suggesting he remain and sit in the main area of the courtroom. Defendant Lewis was given an opportunity to address the Court. Lewis chose, for the most part, to discuss the merits of the 1995 Opinion. *See* Hearing on Motions, Tr. 125.16 - 132,18 and Tr. 136.7 - 136.11. The Court also heard from Defendant Irving Sewer. Sewer also utilized his time before the Court to discuss the merits of the 1995 Opinion. *See* Hearing on Motions, Tr. 136.20 - 144.17.

[3] Since plaintiff seeks counsel fees against defendants Sewer and Lewis, Mario Bryan, Esq., who had represented Cedric Lewis in both his individual and representative capacity, conceived it to be a conflict of interest at this point and sought permission of the court to be relieved of representation of Cedric Lewis individually, but continue to represent him in his capacity as administrator of the estate of Bernard Williams. Such request was granted. Cedric Lewis obtained the services of Ben Currence, Esq., who in a letter dated August 31, 1998, informed the Court of his representation. At the date of the hearing, November 5, 1998, this Court was advised by Lewis that he had discharged Currence the day before. No application to the Court was made to relieve Attorney Currence. Lewis also personally cross-examined Gauriloff. *See* Hearing on Motions, Tr. 64.21-65.16.
It should be noted that Bryan, although representing Lewis as Administrator, at the discretion of the Court was allowed to cross-examine Gauriloff. *See* Hearing on Motions, Tr. 48.19-65.12. Bryan's cross-examination during this time also supported Lewis in his individual capacity. *See id.*

Court enters the following findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## II. FINDINGS OF FACT

### A. THE SURVEY

1. Harry Gauriloff ("Gauriloff") is a registered land surveyor in St. Thomas, United States Virgin Islands, experienced in surveying land on the East End of St. John. He has been a land surveyor for approximately 15 years and has been a licensed surveyor in the Virgin Islands for the past 8 years. *See* Hearing on Motions dated November 5, 1998 ("Hearing on Motions"), Tr. 8.13 - 10.2. He commenced his employment with Marvin Berning ("Berning") in 1991, working with him for four years before Berning retired. Berning had nearly thirty years of experience, surveying the East End of Saint John. *See* 1995 Opinion at 752. At Berning's retirement in August 1995, Gauriloff purchased Berning's business, including all of its records and has continued to operate the company under the name Marvin Berning and Associates. *See* Hearing on Motions, Tr. 10.3 - 10.18.

2. Gauriloff traveled to the East End of St. John on five (5) occasions in 1998, spending approximately 40 hours on site to survey the boundaries of Parcels 6p[4] and 7a. He was assisted in the survey of these parcels by his field crew which spent additional time on site. Gauriloff also spent approximately 40 hours in his office preparing the survey map of these parcels. *See* Hearing on Motions, Tr. 11.9 - 13.4.

3. The Gauriloff survey of Parcels 6p and 7a, is dated July 11, 1998 and is designated as a survey of Parcels 6p Rem., 7a & 7c,

---

[4]Gauriloff's survey utilizes capital letters in indicating the parcels that were surveyed. This Court, in its 1995 Opinion, utilized lower-case letters to indicate the same parcels, e.g. 6P is the same as 6p. For purposes of consistency, this Court will continue to utilize lower case letters in labeling the discussed parcels, but these letters should be considered the same as Gauriloff's equivalent use of capital letters.

Estate of Hansen Bay A, East End Quarter, St. John, U.S.V.I. *See* Exhibit 1.[5]

4. Defendants submitted no surveys of their own, nor did they produce any expert to testify to refute the Gauriloff survey, identified as Exhibit 1.

## B. PARCEL 6p

1. The northern boundary of Parcel 6p is also the southern boundary of Parcel 6f as shown on Public Survey No. G9-1668-T70 (Exhibit 172*).[6] The northern boundary of Parcel 6p is in accordance with Public Survey No. G9-1668-T70 (Exhibit 172*). *See* Exhibit 1 and Hearing on Motions, Tr. 19.5-19.18.

2. Traveling counterclockwise on Exhibit 1, the northwestern boundary of Parcel 6p runs along the mean high water line of Long Bay to Point A, established at south 45 degrees, 45 minutes, 50 seconds west,[7] of the George-Sewer Line (the "George-Sewer Line") as set forth in Exhibit 1. *See* Exhibit 1 and Hearing on Motions, Tr. 19.20-19.24.

3. The southwestern boundary of Parcel 6p forms the newly created A-B portion of the George- Sewer Line.[8] This segment was located through fence lines and bound posts which follow the ridge line toward the sea and honors the boundaries of the existing subdivision in Parcel 7B Water Rock specifically Parcels 3-1, 3-6, 3-19, 3-13, 3-12, and 3-14 as indicated in the 1995 Opinion. *See* 1995 Opinion at 771-2. It also honors the boundaries of Parcel 6p-1 which are shown on Public Survey No.D9-5293-T92 (Exhibit 41*) as being established by adverse possession in the Eric Christian litigation (District Court of the

---

[5] Exhibit 1 is the same map as the map introduced as Exhibit 2, except that Exhibit 2 utilizes colored lines to assist the reader. *See* Tr., 16.9-16.15. For purposes of this Opinion, any references to Exhibit 1 will also implicitly include a reference to Exhibit 2.

[6] Exhibits that were provided in the October 7, 1994 Opinion are indicated with a *.

[7] Although not indicated on Exhibit 1, point A was testified to being 45 degrees, 45 minutes, 50 seconds, as indicated on Exhibit 1. *See* Hearing on Motions, Tr. 36.7-36.10 and 31.11-31.12.

[8] In its 1995 Opinion, the Court determined the B-C-D segment of the George-Sewer line. *See* 1995 Opinion at 773. The Court had rejected the A-B segment, as that portion of land had yet to be surveyed and ordered that segment to be part of a future survey. *See* 1995 Opinion at 756-757. Gauriloff's survey complied with this order.

Virgin Islands Probate No. 398/1980). *See* Exhibit 1 and Hearing on Motions, Tr. 20.4-20.20; 21.15-21.23.

4. The southern boundary of Parcel 6p follows a portion of the George-Sewer Line running from Point B towards Point C as determined in the 1995 Opinion. *See* 1995 Opinion at 754-5. *See* Hearing on Motions, Tr. 22.2.-22.5. The southern boundary of Parcel 6p is also the northern boundary of Parcel 7a. It also follows old fence lines and the ridge line. *See* Exhibit 1 and Hearing on Motions, Tr. 22.9-22.18.

5. The eastern boundary of Parcel 6p follows fence lines running northward up to a tamarind tree, which forms the southeasterly corner of Parcel 6f. The fence line is determined to be the boundary line and is consistent with an unrecorded survey performed for an unrelated party with respect to a parcel of land located to the east of Parcel 6p which is identified on Exhibit 1 as "A Portion of Remainder 6A # 6 Estate Hansen Bay A." *See* Exhibit 1 and Hearing on Motions, Tr. 22.6 - 22.14.

6. Parcel 6p consists of 7.01 acres of land, as shown on Exhibit 1, designated as "Parcel 6p Rem. Long Bay # 2."

## C. PARCEL 7a

1. The northern boundary of Parcel 7a is the southern boundary of Parcel 6p and runs along an old fence line and ridge line. The northern boundary follows a portion of the George-Sewer Line running from Point B towards Point C as set forth in Exhibit 1, consistent with the 1995 Opinion. *See* Exhibit 1 and 1995 Opinion at 754-5.

2. Running counterclockwise on Exhibit 1, the northwestern boundary of Parcel 7a begins at Point B and runs to the sea. This boundary accounts for Floyd George's southeastern boundary of Parcel No. 3 and does not disturb the boundaries of Parcels 3-14, 3-15, 3-20 and REM PCL # 3 in Parcel 7B, Water Rock. *See* 1995 Opinion at 117. The boundary line initially runs from Point B following a ridge line to the southwest where old pieces of fence were located. The boundary line then diverges and follows the bound posts set for Parcel 3. The northwestern boundary of Parcel 7a has been located and surveyed consis-

341

tent with the 1995 Opinion. *See* 1995 Opinion at 744-5; Exhibit 1; and Hearing on Motions, Tr. 22.21-23.15.

3. The western boundary of Parcel 7a was located as following the shoreline of Pond Bay. *See* Exhibit 1 and Hearing on Motions, Tr. 23.16-24.1.

4. The southern boundary of Parcel 7a splits Southside Pond in half. Property north of this boundary line lies within Parcel 7a, while property to the south represents land owned by the Stevens family.[9] *See* Exhibit 1 and Hearing on Motions, Tr. 24.2 - 25.18.

5. The eastern boundary line of Parcel 7a follows a fence line which begins at a fence post on the eastern side of Southside Pond and continues northerly to an intersecting fence line at the northwestern boundary of the fenced-in portion of Parcel 7c (Well Site). The eastern boundary of Parcel 7a continues northerly until it meets the B-C portion of the George-Sewer Line. In locating this boundary it was necessary to survey Parcel 7c,[10] a parcel known to consist of approximately 4 3/4 acres according to the 1894 deed of Parcel 6C (renamed Parcel 7c in the 1913 Agreement - Exhibits 16* and 173*) to Martin Sewer recorded at book U, Page 157, No. 1 (Exhibit 43*). *See* Exhibit 1 and Hearing on Motions, Tr. 25.19 - 25.25.

6. Parcel 7a consists of 9.47+— acres of land and a 5.2+— acre portion of Southside Pond, as shown on Exhibit 1.

## III. CONCLUSIONS OF LAW

### A. EXHIBITS

Defendant Sewer argues that Gauriloff's survey should be rejected because "Plaintiff merely marked its exhibits, including Mr. Gauriloff's survey, but never introduced them into evidence. They were never admitted into evidence." Memorandum of De-

---

[9] In the 1995 Opinion, the historical division of the pond is described as being on a east/west axis. *See* 1995 Opinion at 744. However, Gauriloff found, and the Court now agrees that the pond is best subdivided on a somewhat different axis. *See* Hearing on Motions, Tr. 25.5 - 25.10. The 1995 Opinion, to such extent, is amended accordingly.

[10] Although this Court did not order the survey of Parcel 7c in its 1995 Opinion, to the extent that Gauriloff found it necessary to survey such parcel, this Court accepts the findings reflected on Exhibit 1.

fendant Irvin A. Sewer Re: Acceptance or Rejection of Survey ( "Defendant's Memo.") at 1. Sewer cites no legal support for this proposition. Plaintiff's exhibits 1, 2, and 199* of the 1995 Opinion were identified in the hearing, but were not formally admitted into evidence. Defendant's attorney, George Marshall Miller ("Miller") objected to the introduction of Exhibit 1, requesting to voir dire Gauriloff on the exhibit. *See* Hearing on Motions, Tr. 14.22. The Court, however, overruled this objection, stating that Miller could cross-examine Gauriloff on the exhibit after direct examination was completed. *See Id.* at 15.10-15.15. Consequently, after Gauriloff's direct examination, Miller was given the opportunity to cross-examine the witness. *See Id.* at 29.20-48.6.

■ In *United States v. Barrett*, 111 F.3d 947, 324 U.S. App. D.C. 188 (D.C. Cir. 1997), the Court of Appeals for the District of Columbia Circuit found that where exhibits were never formally admitted into evidence but only marked for identification and treated as if admitted into evidence, they are deemed admitted. *Id.* at 951; 324 U.S. App. D.C. at 192. Likewise, in the instant action, notwithstanding Miller's objection to the first exhibit and its subsequent overruling, all exhibits were identified and treated as if admitted into evidence. Miller himself utilizes the exhibits and treats them accordingly. For example, Miller states that "and when you made your survey, which is represented by Exhibits 1 and 2, you in fact did . . . ." Hearing on Motions, Tr. 38.1 - 38.2; *see also, e.g.* Hearing on Motions, Tr. 36.14 36.15; Hearing on Motions, Tr. 36.4-36.5. Therefore, this Court shall treat these Plaintiff's exhibits as admitted into evidence.

## B. GAURILOFF AS EXPERT WITNESS

Defendant also argues that Plaintiff's survey should be rejected because "nowhere in the transcript does it appear that Plaintiff ever tendered or offered Mr. Gauriloff as an expert witness.' Defendant's Memo. at p. 1. Again, Defendant offers no legal support for this proposition.

Plaintiff's counsel, Alan Garber, questioned Gauriloff on his experience as a surveyor. For example, Garber asked Gauriloff to "tell the Court briefly your educational background. . . ." Hearing on Motions, Tr. 9.6 - 9.7. Garber also asked Gauriloff to describe

his "familiarity with the East End of St. John. . . ." *Id.* at 9.16-9.18. Furthermore, Gauriloff testified that he had previously been an expert witness in court. *See Id.* at 10.19 - 10.21. Defendants did not at any time object to Gauriloff's testifying as an expert who surveyed the land in question. In fact, Defendant Sewer's attorney asked Gauriloff if he would agree "that it's standard practice, or customary for a surveyor, before starting a survey, to inform the adjoining land owners. . . ." *Id.* at 37.21 - 37.24. Such a question would not be posed to a non-expert in the field of surveying.

■  Rule 702 provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

Fed. R. Evid. 702. In *United States v. Vastola, et al.*, 899 F.2d 211 (3d Cir. 1990), vacated on other grounds by, 497 U.S. 1001, 110 S. Ct. 3233, 111 L. Ed. 2d 744 (1990), the Third Circuit stated that "Rule 702 does not condition the admissibility of expert testimony on the proponent's incantation of any particular phrases." *Id.* 899 F.2d at 234. In *Vastola*, the prosecutor had not formally moved to have a witness admitted as an expert. Id. In the instant action, Defendant has raised the same issue. This Court finds Gauriloff's testimony properly admitted under Rule 702.

## C. THE SURVEY OF PARCELS 6P AND 7A

The Court proceeds to a consideration of the survey of the two parcels, 6p and 7a as directed by the Third Circuit. This analysis follows the law and protocol in the 1995 Opinion in bringing finality to the boundaries of the parcels involved.

### 1. SURVEYING ON THE EAST END

The Court turns its attention to the survey marked as Exhibit 1 prepared and presented by Plaintiff's expert witness Gauriloff.

### a. DISCUSSIONS WITH INFORMED PARTIES

Defendant Sewer argues that notice to adjacent and interested landowners was insufficient. He states that "there is nothing to

corroborate [Gauriloff's] self-serving testimony that he 'mailed letters to them all." Despite this contention, Sewer has provided no evidence negating Gauriloff's testimony that he went "to the Recorder of Deeds' Office and . . . got as many addresses of the adjoining owners as we could, and we mailed letters to them all." Hearing on Motions, Tr. 38.5-38.8. Furthermore, the physical survey was completed in June of 1998. *See* Hearings on Motions, Tr. 67.24-67.25. Exhibit D1B is a letter dated February 24, 1998 requesting Louise Sewer to provide input regarding the land. Defendant contends that this letter was not postmarked until March 26, 1998, eleven (11) days after the notification of input deadline. *See* Defendant's Memo. at 3. Even if notification took place after the letter's stated deadline, the mailing still occurred before the survey was completed. All or any recipients could have contacted Gauriloff. Finally, Sewer corresponded with Plaintiff via mail several times. During examination, Gauriloff agreed with the statement that he had invited Sewer "at one point to come in and discuss boundary lines. . . ." Hearings on Motions, Tr. 68.8 - 68.10. In addition, Gauriloff reviewed and relied upon this Court's 1995 Opinion that discussed historical suggestions by interested parties. The Court finds that Gauriloff made a reasonable attempt to contact interested parties, and that no input was made regarding the survey is not sufficient to affect the Court's regard of Gauriloff's findings.

b. PARCELS 6p and 7a

Defendant Sewer makes several objections to the proposed survey created by Gauriloff (Exhibit 1). Defendant had access to Gauriloff's findings prior to the hearing and, despite this, chose not to hire an independent surveyor to survey the area. First, Sewer argues that the survey was based on the erroneous assumption that the Court in its March 27, 1995 opinion, determined the location of the A-B segment of the George-Sewer line. *See* Hearing on Motions, Tr. 31.11 - 33.2. This contention, however, is not accurate. Gauriloff testifies that unlike the rejected A-B segment created by the prior surveyor Berning, Gauriloff's A-B line follows 'the ridge line, and it abuts the existing survey of George that was done on Water Rock.' Hearing on Motions, Tr. at 78.15 - 79.10. In

addition, Gauriloff testified that "Berning stated he never surveyed the line. But I physically did." Id. at 79.9 - 79.10. Given that Defendant offers no affirmative evidence demonstrating another surveyor who has surveyed the land and would come to a different conclusion, and given that Gauriloff has testified as a competent surveyor with satisfactory technique, this Court accepts his placement of the A-B line.

Moreover, although Gauriloff's Point A does not correspond to Anderson's point A, the Court in its 1995 Opinion did not decide to accept Andersen's point A as the beginning of the George-Sewer line. In fact the 1995 Opinion notes repeatedly that Anderson's map created in 1893 was only a rough sketch that did not fully measure the land or detail its description. *See, e.g.* 1995 Opinion at 733, 751. Gauriloff had reviewed the Andersen map, but decided, based upon his survey, that his survey of the land followed the Court's instructions in the 1995 Opinion to "identify and acknowledge the boundaries of adjacent parcels." 1995 Opinion at 771. This Court accepts Gauriloff's determination of point A.

Next, Defendant Sewer argues that point B on Gauriloff's survey is incorrect because he relied upon Berning's survey in determining the A-B segment of the George-Sewer line. Defendant's Memo. at 2. Despite this contention, the 1995 Opinion found the B-C-D segment was valid, so that point B was satisfactory to the Court. *See* 1995 Opinion at 754. It was the depiction prior to Point B that the Court had rejected. Therefore, Gauriloff's determination of Point B is accepted by the Court.

Defendant Sewer further charges Gauriloff with guessing as to the location of boundaries. Sewer's attorney Miller examined Gauriloff, asking "you said the boundary in blue maybe followed the natural gut, but you're just guessing is that correct?" Hearing on Motions, Tr. 70.11 - 70.13 Gauriloff, however, is a trained surveyor with over eight years of experience in St. John. *See id.* at 9.15. Gauriloff's survey is based on several days he spent surveying the area with a crew. He testifies that he "visited the site five times" for the purpose of this survey. *Id.* at 11.15. Although Defendant is quick to call Gauriloff's survey an endeavor in guessing, Sewer and the other defendants have not produced a survey of their own. Based on Gauriloff's technique, depiction, and

testimony, this Court finds Gauriloff's survey to be well-founded and not in danger of being labeled as guess-work.

Next, Defendant points to Gauriloff's division of Southside Pond as contravening this Court's 1995 opinion. It is true that in the 1995 Opinion, the Court states that "according to Harry Sewer's reported statements, the pond was historically split in two, with the western portion belonging to parcel 7a, and the eastern parcel belonging to parcel 7d." 1995 Opinion at 744. Notwithstanding this historical division, the Court had not fixed the boundaries of either 7a or 7d. Gauriloff has determined through his survey that the pond had been split upon a north/south axis, "there would be no way – the land would not be able to be subdivided, the remainder, for the heirs of the family." Hearings on Motions, Tr. 25.1 - 25.3. Given that the defendants have not offered expert testimony to controvert this statement, and based on Gauriloff's expertise in surveying, the Court accepts Gauriloff's division.

Similarly, the Court accepts Gauriloff's survey indicating that 6p constitutes 7.01 acres, more or less. The area in question was not previously surveyed for purposes of the 1995 Opinion. It now has been. Any description of Parcel 6p as approximately four acres, as in the 1994 Stipulation for Entry of Consent Judgment, was included to further identify the parcel, not to define its size or boundaries. The 1995 Opinion orders the survey of the parcel, acknowledging that 6p had yet to be properly surveyed prior to that time. *See* 1995 Opinion at 116.

## IV. CONCLUSION

For the reasons stated above, Defendant's Motion to Reject the Survey is denied. In addition, this Court accepts and approves Gauriloff's location and boundaries of parcels 6p and 7a with his findings as reflected in Exhibit 1.

The hotly contested issues of title, location, and boundaries have been decided. This Court and the Third Circuit have now brought finality to these questions, binding all parties accordingly. This Court will, however, continue to maintain jurisdiction over this case.

## PART II: THE PERMANENT INJUNCTION

### I. INTRODUCTION

Plaintiff seeks a permanent injunction restraining Defendants Irvin A. Sewer, Lucinda Anthony, Earle Sewer, Violet Sewer Mahabir, Jasmine Sewer, Lorel Sewer, Judith Callwood, Leon Callwood, and Cedric Lewis (collectively "Defendants") from certain actions. A preliminary injunction was agreed to by both parties and entered in this matter on September 30, 1991, restraining Defendants from:

> (1) interfering with Plaintiff's contractors and agents in the construction of Plaintiff's road upon Plaintiff's property, Parcels 6-0, 6-0-1, 6-0-2, 6Y, and 6Z Estate Hansen Bay, East End Quarter, St. John, USVI, and in the marketing and sale of lots by Plaintiff from these properties; and

> (2) from publishing defamatory statements about Plaintiff's title to its property and about Plaintiff's business operations.

*See* Stipulation and Order Re: Preliminary Injunction ("Preliminary Injunction") at 2. The Preliminary Injunction was continued pursuant to the Settlement Agreement of June 24, 1996. *See* Settlement Agreement of June 24, 1996 at 3.19 -3.22.

At the time the preliminary injunction was entered, title, location, and boundaries of the parcels were in dispute. In addition, Plaintiff's allegations charged the defendants with trespass, vandalism, harassment, threats, coercion, attempted obstruction of construction work upon Plaintiff's land, slander, and libel. *See* Complaint Generally. The defendants denied trespass and all allegations, predicating their defense on their understanding that they, and not the plaintiffs, were the titleholders of the relevant parcels. *See* Answer Generally. The preliminary injunction put the complicated case into perspective. Before any consideration of the tort allegations, the title, location, and boundaries had to be

determined. These above title and boundary issues have been now determined, and Plaintiff seeks a permanent injunction.[11]

## II. THE PROPOSED ORDER

Newfound's draft injunctive order proposes seven actions from which Defendants should be enjoined. Newfound urges that this Court prohibit the Defendants:

1. From directly or indirectly interfering with Plaintiff's contractors and agents engaged in and involved with construction of the road and underground utilities upon property owned by Newfound Limited Partnership and its successors in interest (collectively "Newfound") consisting of Parcels 6-0, 6-0-1, 6i-0-2, 6f, 6Y and 6Z, Estate Hansen Bay A., No. 6 East End Quarter, St. John, U.S. Virgin Islands, as shown on surveys filed as P.W.D. No. G9-1667-T70 submitted as Plaintiff's Exhibit 125* (Parcel 6-0), P.W.D. No. D9-4313-T88 (Parcel 6-0-1), P.W.D. No. D9-4848-T89 (Parcel 6-0-2), P.W.D. No. G9-1668-T70 (Parcel 6f), P.W.D. No. B9-425-T74 (Parcel 6Y) and P.W.D. No. B9-243-T69 (Parcel 6Z) (collectively the "Newfound Property");

2. From directly or indirectly interfering with Plaintiff's employees, consultants and agents engaged in and involved with the marketing and sale of house lots divided out of the Newfound Property;

3. From directly or indirectly making verbal or written defamatory statements about the title to the Newfound Property and about Plaintiff's business operations;

4. From directly or indirectly asserting claims or ownership interest in any portion of Newfound Property;

5. From asserting in proceedings before the Virgin Islands Department of Planning and Natural Resources, the Coastal Zone Management Commission, the Committee

---

[11] Plaintiff's tort claims against Defendants were not litigated, as by agreement they were dismissed. Thus, there is no finding by this Court of liability on the part of Defendants as to these issues. Nevertheless, the Court will proceed with an analysis and determination of Plaintiff's Motion for a Permanent Injunction.

on Planning and Environmental Protection and the Legislature, in any newspaper or in any other forum or to any other persons that Newfound does not own the Newfound Property, or, more specifically, that Newfound does not own its dock and the beachfront portion to the mean high watermark of Parcel 6-0 (Longbay No.1), Estate Hansen Bay A., No. 6 East End Quarter, St. John, U.S. Virgin Islands, as shown on the plan prepared by V.I. Engineering and Surveying, Inc. filed as P.W.D. No. G9-1667-T70;

6. From directly or indirectly asserting by way of pleading, correspondence or oral argument in the action entitled *Emanual Sewer v. Heirs of James Herbert Stevens, et al.*, Territorial Court of the Virgin Islands Civil No. 537/1988, or in any other legal proceeding or forum that (i) the location of the B-C-D segment of the dividing line between the land belonging to the heirs of William Henry George and the land belonging to the heirs of Eve Marie Sewer as described in the 1894 Agreement recorded with the Office of the Recorder of Deeds at Book U. Page 183, No. 3 (the "George-Sewer line") is otherwise than as drawn by Marvin Berning, Surveyor, and attached as Appendix A to the Opinion of this Court dated March 27, 1995, (ii) the location and boundaries of Parcel 6Y are otherwise than as shown on the survey filed as P.W.D. No. B9-425-T74, and (iii) the location and boundaries of any portions of the Newfound Property are otherwise than as set forth in this Court's Opinion and Order dated March 27, 1995; and

7. From writing letters to the editor, publishing newspaper articles, preparing correspondence or making oral statements to judges, public officials or private parties which assert, imply or suggest that any surveys prepared by H. Marvin Berning, Virgin Islands Engineering and Surveying, Inc. or Marvin Berning & Associates, which involve parcels of land owned by Newfound or its successors in interest are erroneous.

*See* Order of Entry of Permanent Injunction.

350

## III. ISSUES ARISING FROM THE PROPOSAL

Several issues arise from Plaintiff proposals. The Court will discuss each potential problem in turn.

### A. THE WORDS "DIRECTLY OR INDIRECTLY"

In its proposed order, Newfound uses the phrase "directly or indirectly" in ¶¶ 1,2,3,4, and

6. The Federal Rules of Civil Procedure Rule 65(d) states:

> (d) Form and Scope of Injunction or Restraining Order. Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained . . .

Fed. R. Civ. Proc. Rule 65(d). The Supreme Court in Schmidt v. Lessard, 414 U.S. 473, 94 S. Ct. 713, 38 L. Ed. 2d 661 (1974), has noted the importance of this Rule:

> As we have emphasized in the past, the specificity provisions of Rule 65(d) are no mere technical requirements. The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, . . . . The requirement of specificity in injunction orders performs a second important function unless the trial court carefully frames its orders of injunctive relief, it is impossible for an appellate tribunal to know precisely what it is reviewing.

*Id.* at 476-477, citing Gunn v. University Committee to End the War, 399 U.S. 383, 388, 90 S. Ct. 2013, 2016, 26 L. Ed. 2d 684 (1970). The Third Circuit, in a case concerning Rule 65(d) injunctions, has stated that "the party constrained is entitled to 'fair and precisely drawn notice of what the injunction actually prohibits' because serious consequences may befall those who do not comply with court orders." *Louis V. Epstein Family Partnership v. KMART Corporation*, 13 F.3d 762, 771 (3d Cir. 1994), citing *Granny Goose Foods, Inc. v. Brotherhood of Teamsters, Local No. 70*, 415 U.S. 423, 444, 94 S. Ct.

1113, 1126, 39 L. Ed. 2d 435 (1974). "Broad, non-specific language that merely enjoins a party to obey the law or comply with an agreement, however, does not give the restrained party fair notice of what conduct will risk contempt. Id., citing *Calvin Klein Cosmetics Corp. v. Parfums de Coeur, Ltd.*, 824 F.2d 665, 669 (8th Cir. 1987).

As applied in the instant case, the words "indirectly or directly" do not give Defendants a specific understanding of the restrictions that must be followed. The word indirectly could be construed to encompass any action by the Defendants. Furthermore, such restrictive language could infringe upon Defendants' Constitutional rights, as will be discussed below.

## B. FIRST AMENDMENT ISSUES

### 1. DEFAMATORY STATEMENTS

Newfound's proposal in ¶3 precludes any "verbal or written defamatory statements about the title to the Newfound Property and about Plaintiff's business operations." Such a proposal raises issues concerning Defendant's First Amendment rights. Generally, allegedly defamatory publications may not be enjoined. Floyd Abrams, *Prior Restraints*, 420 PLI/Pat 343, 495 (1995).[12] For example, in *Bailey v. Systems Innovation, Inc., et al.*, 852 F.2d 93 (3d Cir. 1988), the Third Circuit found that the civil litigants' first amendment right to freedom of speech was violated by a district court order that imposed upon them requirements governing Extrajudicial Statements by Attorneys in Civil Cases. *Id.* The Court stated that the order was "a prior restraint on speech, that carries with it 'heavy presumption against its constitutional validity.'" *New York Times Co. v. United States*, 403 U.S. 713, 714, 91 S. Ct. 2140, 2141, 29 L. Ed. 2d 822 (1971) (citations omitted). Furthermore, the court stated that "if any method other than a prior restraint can effectively be employed to further the governmental or private interest threatened here, then the order is invalid." *Id.* In the instant

---

[12] In *Kramer v. Thompson*, 947 F.2d 666 (3d 1991), the Court stated that 'after a plaintiff has, by judgment at law, established the fact that certain published statements are libelous, he may, on a proper showing, have an injunction to restrain any further publication of the same or similar statements.' *Id.* at 677, citing 42 Am.Jur.2d Injunctions § 135, at 892 (1969). However, this reasoning is inapplicable here, as no adjudication has taken place over any libel claims against Defendants.

352

action, Newfound has not presented any evidence to defeat this "heavy burden of unconstitutionality" and therefore such language should be omitted from any permanent injunction issued by the Court.

Furthermore, in *People v. Rothschild Francis*, 1 VI 66 (DCVI 1925), the court stated that "individuals are free to talk, and the press is at liberty to publish, and neither may be restrained by injunction, but they are answerable for the abuse of this privilege in an action for libel and slander under the common law . . ." *Id.* at 78, citing Stuart v. Press Pub. Co., 83 A.D. 467, 82 N.Y.S. 401. Applying *Rothschild* to the instant action, this Court will not accept Newfound's proposal to enjoin permanently Plaintiff from defaming Newfound, as a remedy exists after the "abuse" (if it ever actually occurs) and not before it.

### 2. LETTERS OR PUBLICATIONS

■ The discussion above applies even more strikingly to Newfound's proposal in ¶7 to prohibit Defendant from publishing articles or opinions in the newspaper. Newfound's proposal does not even allege that such statements would be defamatory. Therefore, such a prohibition would be inexcusable under the First Amendment.

### C. FUTURE CLAIMS BY DEFENDANTS

¶¶4, 5, and 6 of Newfound's proposals concern preclusion of any future claims by the Defendants against Newfound, with regard to any aspect of the property determined to be owned by Newfound. Defendants respond by objecting to any injunction against their right to assert claims against any of Plaintiff's property.

In *O'Hara v. Board of Education of the Vocational School in the County of Camden*, 590 F. Supp. 696 (D.N.J.), the Court held that a terminated teacher would not be enjoined from filing further legal actions concerning matters stemming from her past employment given the public's fundamental rights of access to the courts. *Id.* at 705. The Court stated that:

the public has a fundamental right of access to the courts. Any injunction limiting that access must be exercised

sparingly and only in those situations in which 'the exclusive harassment purpose is not merely a matter of the suitor's subjective intent but is, rather, objectively determinable.' . . . There are innumerable issues that could arise concerning plaintiff's past employment and such a far-ranging prospective injunction would be inappropriate.

*Id.* at 705, citing *D'Amore v. D'Amore*, 186 N.J. Super. 525, 530, 453 A.2d 251 (App.Div. 1982). In the instant action, the consequences of prohibiting future suits in such a comprehensive manner would also be far reaching and inappropriate. In addition, Newfound has not provided any evidence stating that Defendant has brought objectively harassing claims in the past.

This Court in O'Hara further stated that:

The court believes that defendant will have an adequate remedy should plaintiff institute further litigation. If plaintiff attempts to relitigate precluded matters regarding her past employment, defendant can move for summary judgment, and an award of counsel fees. If plaintiff attempts to raise new matters regarding her past employment, defendant always may move for an award of counsel fees if a suit was commenced or prosecuted in bad faith, vexatiously, wantonly, or for oppressive reasons.

*Id.* 590 F. Supp. at 705, citing *Hall v. Cole*, 412 U.S. 1, 5, 93 S. Ct. 1943, 1946, 36 L. Ed. 2d 702 (1973). Accordingly, in the present case, an injunction should not preclude Defendant from bringing future claims. If Defendant should bring a claim, Newfound may move for summary judgment based on res judicata or collateral estoppel, as the case may warrant.

■ It is important to note that injunctions precluding relitigation have been upheld by various circuit courts. *See,* e.g., *Clinton v. United States*, 297 F.2d 899 (9th Cir. 1961); and *Green v. Warden*, U.S. Penitentiary, 699 F.2d 364 (7th Cir. 1983). However, in such cases, the respective courts noted that enjoined parties had brought harassing, repetitive, and/or frivolous suits in the past.

354

Here, no such suits have been brought by the defendants and therefore this action is not analogous to those cases.

## D. REMAINDER OF PLAINTIFF'S PROPOSAL

As to the remainder of Plaintiff's proposal, title, location, and boundaries have been determined. *See, supra, generally.* Consequently, the reasons to provide Plaintiff with injunctive relief cease to exist as they did before the determination of title, location, and boundaries.

## IV. CONCLUSION

For the above reasons, Plaintiff's motion for a permanent injunction is denied. The Court will, as noted in Part I, continue to maintain jurisdiction over this case and expects that the parties will abide by its findings.

## PART III: PLAINTIFF'S MOTION TO AMEND THE COMPLAINT

## I. INTRODUCTION

Plaintiff seeks to amend its Complaint pursuant to Federal Rule 15 and Local Rule 15 in order to add, as an additional Plaintiff, Privateer Bay Management Corporation, General Partner of Privateer Bay Limited Partnership ("Privateer"). *See* Plaintiff's Revised Motion to Amend Complaint.

## II. DISCUSSION

Rule 15 allows a party to amend a pleading:

> once as a matter of course at any time before a responsive pleading is served or, if the pleading is one to which no responsive pleading is served or, if the pleading is one to which no responsive pleading is permitted and the action has not been placed upon the trial calendar the party may so amend it at any time within 20 days after it is served. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires.

Fed. R. Civ. P. 15 and LRCi 15.

Generally, leave to amend a pleading should be liberally given when justice so requires and such an amendment would not cause prejudice to the opposing party. *Simmons v. Catamaran Cruises, Inc.,* 17 V.I. 333 (1980). In reaching a determination on a motion to amend pleadings, the particulars of the specific claim must be analyzed to ascertain whether or not any prejudice to the opposing party is sufficient to deny leave to amend the complaint. *Choate v. Skinner,* 19 V.I. 399 (Terr. Ct. 1983).

Newfound alleges that it gave to its lender "a deed in lieu of foreclosure, which transferred the assets of Newfound Limited Partnership to a successor entity, Privateer Bay Limited Partnership." *See* Plaintiff's Revised Motion to Amend Complaint at 1-2. However, Privateer is a separate entity distinct from Newfound, which was the subject of this litigation. It is simply a grantee company that has received property from Newfound's mortgagee. Newfound's Second Amended Complaint repeats alleged acts directed by Defendants against *Newfound,* not Privateer.[13] None of the actions alleged against the defendants, including trespass, vandalism, harassment, threats, coercion, attempted obstruction of construction work upon Plaintiff's land, slander, and libel, have been alleged to occur against Privateer, nor is there evidence of any contemplation or threat by Defendants of committing these acts against Privateer.

■ At this final stage of an eight-year litigation, where boundaries, location, title, and tort disputes have been resolved, *see supra* Parts I and II, this proposed Second Amended Complaint has no relevance. The prejudice to the defendants is obvious.

III. CONCLUSION

The Court will deny Newfound's Motion to Amend the Complaint for the reasons set forth above.

---

[13] This is not a situation where Plaintiff seeks only to change its name and in all other respects to remain within its original legal format. Instead, it seeks to bring a stranger into this litigation.

**PART IV: MOTION FOR ATTORNEY'S FEES**

I. REQUESTED FEES

Plaintiff has brought a motion for an award of counsel fees and costs pursuant to 5. V.I. § 541(a)(6) and Fed. R. Civ. P. 54(d)(2).

Plaintiff's attorney originally requested $397,647.65 in counsel fees in connection with this action. At the hearing of November 5, 1998, Plaintiff conceded costs under the heading of "prelitigation costs" and fees not supported by affidavits. *See* Hearing on Motions, Tr. 112.18 - 118.24. Plaintiff, in addition, does not ask for travel, copying/communication expenses, and construction costs. *See* Hearing on Motions, Tr. 113.4 - 113.12.

Fees were divided by the two law firms that are representing Newfound in this action, and each is divided into exhibits. The law firm of Cooper & Graves claims the following hours that have not been conceded by Plaintiff:

| | | |
|---|---|---|
| Exhibit 186: | 70.65 hours x $ 175.00 = | $ 12,363.75 |

The law firm of Mason & Martin claims the following hours that have not been conceded by Plaintiff:

| | | |
|---|---|---|
| Exhibit 186: | 303 hours x $ 175.00 = | $ 53,025.00 |
| | 260.8 hours x $ 200.00 = | $ 52,160.00 |
| | 34.8 hours x $ 150.00 = | $ 5,220.00 |
| | 237.9 hours x $ 125.00 = | $ 29,737.50 |
| Exhibit 187: | 114.1 hours x $ 200.00 = | $ 22,820.00 |
| | 5.7 hours x $ 150.00 = | $ 855.00 |
| | 3.90 hours x $ 125.00 = | $ 487.50 |
| Exhibit 227: | 145.6 hours x $ 200.00 = | $ 29,120.00 |
| | 1.1 hours x $ 150.00 = | $ 165.00 |
| Exhibit 229: | 79 hours x 200.00 = | $ 15,800.00 |
| | 33.6 hours x 175.00 = | $ 5,880.00 |
| | 58.6 hours x 150.00 = | $ 8,790.00 |
| Exhibit 233 | 164.7 hours x 200.00 = | $ 32,940.00 |
| | 169 hours x 150.00 = | $ 25,350.00 |
| | Total: | $ 307,077.50 |

II. AWARD OF FEES

Although the Court is generally reluctant to mass all the fees of the litigation together, there is great overlap between all aspects of

the litigation and this is reflected in the billing details. Therefore, it is necessary to factor all the aspects of the case before determining whether attorney's fees are appropriate.

Pursuant to 5 V.I. § 541(b) (Michie 1997), the Court has discretion to award Plaintiff's counsel their counsel fees and costs. *See* 5 V.I. § 541(b) ("There shall be allowed to the prevailing party in the judgment such sums as the court in its discretion may fix by way of indemnity for his attorney's fees in maintaining the action or defenses thereto." The purpose of 5 V.I.C. § 541 is "to indemnify the prevailing party." *Bedford v. Pueblo Supermarkets of St. Thomas, Inc.*, 18 V.I. 275, 278 (D.V.I. 1981). The reasoning behind the statute "is that a party should not have to bear the legal expenses of demonstrating either that it is not at fault or that it is the victim of another's fault." *Id.* By extension then, if neither party is at fault in a litigation, then no attorneys fees are appropriately awarded. The decision not to award attorney's fees is not aberrant under Virgin Island law. *See e.g., Laltoo v. Bank of Nova Scotia*, 18 V.I. 479 (D.C.V.I. 1981); *Figueroa v. Trans-Oceanic Ins. Co.*, 12 V.I. 140 (D.V.I. 1975); *Daly v. Kier*, 2 V.I. 227, 228 (D.V.I. 1952); *Stoner v. Bellows*, 2 V.I. 172, 187 (D.V.I. 1951); and *Chase v. A.M.E. Church*, 108 F.2d 977, 2 V.I. 411 (3d Cir. 1940) (a case arising under the less discretionary provisions of an earlier statute.).

Defendant Sewer argues that his and co-Defendants' actions were undertaken in "the context of a genuine, bona fide land dispute due to the variances and discrepancies in deeds and land records recorded over more than a century." Defendant's Opposition at ¶7. Where parties cannot agree on title and boundaries of land parcels, the Court has an important role in determining the outcome of the disputed issues. *See* V.I. Code Ann. tit. 28 § 372.

This Court agrees with Defendants that the subject of this litigation constituted a genuine land dispute. Indeed, in the 1995 Opinion, this Court noted that "land recording practices and a perplexing mixture of unsurveyed land, conflicting surveys, uncertain genealogies and unprobated estates complicate the title and boundary issues presented to the court." 1995 Opinion at 3. In addition, Defendants adamantly argued that the parcel was their property and had been stolen from them, while Plaintiff argued the land was properly Newfound's as the result of a legitimate

business transaction. For these reason, the action to quiet title was necessary and not a result of bad faith or malicious behavior on the part of the defendants. Furthermore, Newfound was not the only successful party in the action to quiet title. In its 1995 Opinion and Order, this Court found that title to parcel 6p was in part in favor of Defendants Bernard Williams and Irvin Sewer, for the heirs of Martin Sewer, and that title to parcel 7a was in part in favor of the Estate of Bernard Williams, Irvin Sewer and Violet Sewer, and Newfound. *See* generally, 1995 Opinion and Order.

As to the fees for work in preparation for the preliminary injunction, Plaintiff argues that the cost of preparation was necessary in order to reach the stipulation. *See* Hearing on Motions, Tr. 114.13-114.18. What Plaintiff does not state, however, is that it did receive something in return for its preparation for the preliminary injunction stage of this litigation. That is, Plaintiff received an injunction in a litigation where title was not clear at the time it was entered. Given the contested state of title and boundaries at the time the parties stipulated to the injunction, a Court may not have issued such an injunction.

Plaintiff also argues that because of Defendants' actions "what should never have occurred and what should certainly have taken a short period of time, took seven years to conclude." *See Id.*, 134.8-134.10. Such an argument, however, does not support Plaintiff's motion. The issues within this litigation were extremely complex and had to be resolved accordingly. While a more expeditious course may have been possible, it cannot be said that Defendants maliciously slowed these proceedings.

III. CONCLUSION

In considering the complexity of the circumstances surrounding the litigation, the need to work out the boundaries between the properties, and the successful outcome for both parties, this Court will deny Plaintiff's request for attorney's fees and costs.

**PART V: MISCELLANEOUS**

This case is now completed. The title, location, and boundary lines are fully determined. The Court recognizes that the defen-

dants, as well as the plaintiff, are not entirely pleased with the outcome. However, peace must now prevail, as it is to the advantage of all parties to this litigation to co-exist as good neighbors with respect for each other.